UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>*Plaintiff,*<br><br>-against-<br><br>IRIS CAPITAL SECURITIES S.A.L., ANTOINE KHALIFE, and ONE OR MORE UNKNOWN PURCHASERS OF SECURITIES OF TELVENT GIT, S.A.,<br><br>*Defendants.* | Civil Action No.: 11-cv-03794 (TPG)<br><br>ECF CASE<br><br>**DEFENDANTS' RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT** |

Defendants Iris Capital Securities SAL ("ICS") and Antoine Khalife ("Mr. Khalife") (together, "Defendants") submit this Rule 56.1 Statement in support of their Cross-Motion for Summary Judgment against Plaintiff the Securities and Exchange Commission (the "SEC'):

1.    ICS was a money management firm located in Beirut Lebanon.  Batista Decl., Ex. 1 ¶ 4.

2.    Mr. Khalife, ICS' founder and principal, ran the company and was responsible for making the trading decisions.  Batista Decl., Ex. 1 ¶ 4; Ex. 11 at 37:9-21.

3.    On April 29, 2011, ICS purchased 50,000 common shares and 700 call options in Telvent GIT, S.A. ("Telvent") on behalf of certain of its clients.  Batista Decl., Ex. 1 ¶ 8.

4.    On May 27, 2011, ICS rolled over 300 options with a strike price of $35 that were to expire on June 18 for 300 options with the same strike price that would expire on July 17, and bought an additional 500 options for its clients who did not already own a stake in Telvent and could not afford to buy shares.  Batista Decl., Ex. 1 ¶ 9.

5.    On June 1, 2011, Telvent and Schneider Electric S.A. ("Schneider") announced that Schneider would purchase all the outstanding shares of Telvent from Telvent's then-parent company Abengoa S.A. ("Abengoa").  Batista Decl., Ex. 6 ¶ 20.

6. On June 1, 2011, ICS sold all the Telvent options and common shares that it had purchased. Batista Decl., Ex. 1 ¶ 10.

7. ICS decided to purchase shares and options in Telvent after analyzing publicly-available information and observing changes in the price and volume of Telvent trades. Batista Decl., Ex. 1 ¶¶ 11-34 & Exs. A-P; Batista Decl., Ex. 11 at 62:9-12, 79-83, 101:8-10, 104:9-12, 117.

8. The purchases were not unusual for ICS in size or form and represented only a small portion of its clients' net worth. Batista Decl., Ex. 1 ¶ 11.

9. The purchases also represented only about 5 percent of all the trades that ICS made at that time. Batista Decl., Ex. 1 ¶ 11.

10. ICS was not in possession and did not rely on material non-public information regarding Schneider's acquisition of Telvent in making its trades in Telvent securities. *See* Batista Decl., Ex. 1 ¶ 5; Ex. 11 at 57:13–58:7.

11. The SEC has received extensive discovery, including: (1) a complete, voluntary document production of, *inter alia*, the names and contact information of all ICS employees, all emails containing the terms "Telvent," "Abengoa" or Schneider, detailed landline and cell phone records for ICS and Mr. Khalife, and documentation for the Telvent trades at issue; (2) a thorough deposition of Mr. Khalife; (3) cooperation, including production of hundreds of pages of documents from private and governmental entities in France, Spain and Lebanon, including all the parties to the Telvent acquisition and the financial institutions involved in the trades at issue in this case. Batista Decl., Ex. 7 ¶¶ 11-12; Batista Decl. ¶¶ 10-12 & Exs. 8-9.

12. The SEC has no evidence that Defendants received material non-public information in connection with their trading activity in Telvent securities. Batista Decl., Ex. 12

(stating that the SEC "has been unable to discover a source of material nonpublic information in connection with defendants' trading activity in Telvent").

Dated:  New York, New York
        October 19, 2012

                                                    /s/ Paul Batista
                                                **PAUL BATISTA**