UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                        Plaintiff,<br><br>v.<br><br>IRIS CAPITAL SECURITIES S.A.L., ANTOINE KHALIFE, and ONE OR MORE UNKNOWN PURCHASERS OF SECURITIES OF TELVENT GIT, S.A.,<br><br>                        Defendants. | Civil Action No. 11-cv-3794 (TPG)<br><br>ECF CASE |

**THE SECURITIES AND EXCHANGE COMMISSION'S
REPLY IN FURTHER SUPPORT OF ITS MOTION TO VOLUNTARILY
DISMISS THIS ACTION PURSUANT TO FED. R. CIV. P. 41(a)(2)**

Paul W. Kisslinger (PK0764)
U.S. SECURITIES AND EXCHANGE
COMMISSION
100 F Street, NE
Washington, D.C. 20549-5977
(202) 551-4427
(202) 772-9292 (Fax)

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

   I.    DEFENDANTS HAVE NOT DEMONSTRATED THAT ANY
        OF THE *ZAGANO* FACTORS WEIGH IN THEIR FAVOR ....................................... 4

        A.    The SEC Was Diligent In Moving To Dismiss ....................................... 4

        B.    The SEC Has Not Acted With Any Vexatiousness ................................ 5

        C.    The Defendants Have Not Expended Significant Resources
              In This Litigation, Which Has Barely Progressed ................................. 6

        D.    Defendants Have Demonstrated No Duplication of Expenses .......................... 10

        E.    The SEC's Reasons For Dismissal Are Valid; Defendants Will
              Not Suffer Legal Prejudice Should Its Motion Be Granted ............................... 11

CONCLUSION ................................................................................................................ 12

Plaintiff United States Securities and Exchange Commission (the "Commission" or "SEC") hereby submits its reply in further support of its motion to voluntarily dismiss this action without prejudice pursuant to Fed. R. Civ. P. 41(a)(2).  The SEC will respond to the Defendants' cross motion for summary judgment separately, as necessary, as it involves a different analysis, standard of review, and procedural context.[1]

## INTRODUCTION

By letter brief dated May 21, 2012 ("SEC Let. Br.") [Exhibit 1], the SEC moved the Court to dismiss this action without prejudice, pursuant to Fed. R. Civ. P. 41(a)(2).  In support of its motion, the SEC set forth an analysis under two lines of authority – the "plain legal prejudice" standard, and the analysis set forth in *Zagano v. Fordham Univ.,* 900 F.2d 12, 13 (2d Cir. 1990) (*"Zagano"*).  SEC Let. Br. at 2-3.

Defendants, Iris Capital Securities SAL ("ICS") and Antoine Khalife, opposed the SEC's motion with a one-page letter dated May 21, 2012.  They did not proceed through an analysis under either line of authority outlined by the SEC, nor cite one case in their support.  They requested an opportunity to provide more formal briefing.  On October 19, 2012, Defendants filed a second opposition, combined with a cross motion for summary judgment.  *See* Defendants' Combined Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss, et al. [Dkt. 60] ("ICS Br.").  In this second round of briefing, again covering about one page (ICS Br. at 26-27), Defendants have provided few additional issues for the Court to consider, certainly none sufficient to overcome the presumption in the Second Circuit that a plaintiff has an "unqualified right" to dismiss its own claims without prejudice.  Defendants still have not set

---

[1]   As the SEC outlines below, the Defendants' summary judgment motion, based on little more than Defendant Antoine Khalife's affidavit and an incomplete discovery record, is unripe for determination.  Because a favorable ruling on the SEC's motion to dismiss will terminate this action, the SEC respectfully requests that the Court first rule on its pending motion prior to requiring the SEC to respond to the motion for summary judgment.

1

forth an analysis under *Zagano*, leaving the SEC's earlier analysis unchallenged. The "two reasons" they put forward to oppose the SEC's motion (ICS Br. at 26) do not come close to satisfying the "plain legal prejudice" standard.

Defendants' first "reason," that they have been able to cobble together a summary judgment motion at the beginning of proceedings under the Federal Rules, based on a self-serving affidavit and an incomplete discovery record, certainly is not sufficient. *See SEC v. Compania Internacional Financiera S.A.,* 11 Civ. 4904 (JPO), 2012 WL 1856491, *2 (S.D.N.Y. May 22, 2012) (*"Compania"*) (citations omitted) (granting SEC's motion to voluntarily dismiss <u>after</u> close of discovery, and <u>after</u> defendants filed an unripe summary judgment motion) ("It is therefore a stretch to say that the case is ripe for adjudication on the merits.… And, as discussed above, given the incomplete nature of discovery, it is premature to conclude that Defendants are entitled to a favorable determination of the merits.")

Defendants' second "reason," that they are anxious about potential future litigation (ICS Br. at 26-27) also fails. The law in this Circuit is settled that Defendants need to show actual legal prejudice <u>beyond the threat of future litigation</u> to overcome the presumption favoring the SEC. *See Compania,* 2012 WL 1856491, *7 ("The prospect of a second litigation is not sufficient for the Court to deny the Commission's motion.") This, they have not done.

While misapplying two older decisions that involved extraordinary facts not even arguably present here (ICS Br. at 26), Defendants have ignored a wealth of contrary authority. They surprisingly did not cite the recent SEC insider trading decision, *Compania,* 2012 WL 1856491, brought against one of the same Geneva-based traders who traded in Telvent (and other companies) alongside Mr. Khalife (collectively, the "Geneva Traders"). Without any

attempt to distinguish *Compania* from this case,[2] Defendants ask this Court to rule to the contrary, though discovery has barely begun, and the SEC submitted its motion to voluntarily dismiss <u>five months before</u> the Defendants' moved for summary judgment.

Because the SEC's arguments remain unchallenged by relevant facts or controlling law, the Court should grant its motion to dismiss without prejudice, pursuant to Fed. R. Civ. P. 41(a)(2).

## ARGUMENT

**I.    DEFENDANTS HAVE NOT DEMONSTRATED THAT ANY OF THE *ZAGANO* FACTORS WEIGH IN THEIR FAVOR**

Every recent decision from the Second Circuit reviewed by the SEC that has ruled on a Rule 41(a)(2) motion to dismiss has proceeded through the five-element analysis set forth in *Zagano*. *See e.g., A.V. by Versace, Inc. v. Gianni Versace S.p.A.,* 261 F.R.D. 29, 32 (S.D.N.Y. 2009) (*citing D'Alto v. Dahon Calif., Inc.,* 100 F.3d 281, 283 (2d Cir. 1996) (remanding for consideration of the *Zagano* factors)); *Compania,* 2012 WL 1856491, *2-4; *SEC v. Charkapani,* 09 Civ. 325, 09 Civ. 1034 (RJS), 2010 WL 2605819, *2-5 (S.D.N.Y. June 29, 2010) (*"Chakrapani"*); *Banco Central de Paraguay v. Paraguay Humanitarian Foundation, Inc.,* No. 01 cv 9649 (JFK), 2006 WL 3456521, *4-8 (S.D.N.Y Nov. 30, 2006) (*"Banco Central"*); *Silipos, Inc. v. Bickel,* No. 06 Civ. 2205, 2006 WL 3775966, *2-3 (S.D.N.Y. Dec. 18, 2006).

In their two rounds of briefing, Defendants have done a lot of table-pounding, but have opted not to proceed through the *Zagano* analysis, leaving the SEC's analysis unchallenged. *See Banco Central,* 2006 WL 3456521, *3-4 ("Defendants' brief addresses only three of the five *Zagano* factors, and these only cursorily. Despite a few sporadic assertions that dismissal

---

[2]   Defendants clearly are aware of *Compania*, having relied on the case for an unrelated discovery issue to support their motion for summary judgment. *See* ICS Br. at 12-13.

3

simply will result in 'legal prejudice,' the defendants merely make conclusory 'pound the table' statements with no evidentiary support whatsoever.") (citations and internal elipses omitted).  Nevertheless, the SEC attempts to respond below to Defendants' arguments, as applied to the appropriate *Zagano* elements, though the Court should not be required to dig through their briefing to do so.  See *U.S. v. Dunkel*, 927 F.2d 955, 56 (7th Cir. 1991).

    **A.**    **The SEC Was Diligent In Moving To Dismiss**

For the first *Zagano* factor, the Defendants do not contend that the SEC failed to act diligently in moving to dismiss this action.

Nor could they.  The SEC moved to dismiss more than five months ago, on May 21, 2012, before the scheduling of an initial pretrial conference, before the exchange of Rule 26 initial disclosures, before Rule 26 discovery has begun in earnest, and within weeks of telling the Court that it would dismiss if it was unable to reasonably discover a source of material nonpublic information concerning Defendants' suspicious trading activities under the constraints of international discovery.  See Transcript of April 24, 2012 Hearing ("April 24 Tr.") [Exhibit 2] at 19-20.

The SEC's conduct in this case is thus far more diligent than the plaintiffs' conduct in the two cases cited by Defendants (ICS Br. at 26), *Pacific Elec. Wire and Cable Co., Ltd. v. Set Top Int'l, Inc.,* 2005 WL 578916 (S.D.N.Y. Mar. 11, 2005) *("Pacific Wire"),* and *Deere & Co. v. MTD Holdings, Inc.,* 2004 WL 1432554 (S.D.N.Y. June 24, 2004) *("Deere"),* who waited for years to move to dismiss after hard fought discovery.  See *Pacific Wire,* 2005 WL 578916, *5 (plaintiff's abrupt attempt to "pull the plug" after scheduling six depositions in Taiwan and conducting months of other discovery lacked diligence and was filed "too late").  And indeed, as outlined below, the diligence of the SEC here is even greater than that of plaintiffs in a slew of other cases in which the courts granted Rule 41(a)(2) motions filed

4

much farther along in litigation. *See Banco Central,* 2006 WL 3456521, *5-6 at (citing cases).

This factor thus weighs in favor of the SEC.

### B.     The SEC Has Not Acted With Any Vexatiousness

The Defendants also do not argue that the SEC acted with any vexatiousness or ill motive in prosecuting this case. *See Compania,* 2012 WL 1856491, *5 ("Courts define 'undue vexatiousness' to mean "that the plaintiff acted with 'ill-motive' in bringing or maintaining its claims.") (citations omitted). This would not be a meritorious argument given the procedural history of this case.

The SEC instituted this emergency action immediately after learning that the Defendants and the two other Geneva Traders, all unknown at the time, purchased Telvent shares prior to the June 1, 2011 announcement that Telvent was going to be acquired by the French company, Schneider Electric. The SEC moved for, and obtained a temporary restraining order (TRO) and asset freeze after demonstrating to the Court in two evidentiary hearings "a strong likelihood that the Commission will prevail at trial on the merits," (TRO [Dkt. 5] at ¶ 2), and a "probability of success on the merits as to a claim of insider trading." (Transcript of preliminary injunction hearing [Dkt. 12] at 12). The Court thus has determined as a matter of law that the SEC's actions in bringing this case were meritorious.

As for the SEC's subsequent actions in this litigation, these too have been expeditious and appropriate. The SEC represented in its very first meeting with the Defendants after they identified themselves, and then to the Court at the April 24 hearing, that, if it were unable to reasonably discover any links between the Defendants' trading and any sources of material nonpublic information, the SEC would dismiss its case. *See* April 24 Tr. at 19-20. The SEC did just that, less than a month later. The SEC's actions are thus not at all akin to the

criticized actions of the plaintiff in *Pacific Wire,* 2005 WL 578916, *5, in which the court found that the plaintiff acted with "some vexatiousness" by moving to dismiss after having represented to the Court that it intended to keep litigating. *See also, Banco Central,* 2006 WL 3456521, *4 (distinguishing *Central Wire*).

To the contrary, as this Court found in *Compania*, "[t]here is no evidence that the Commission acted with any undue vexatiousness in initiating or maintaining this action against Defendants. Nor is there any evidence that the Commission has maintained these claims for any reason other than to fulfill its mission and protect the investing public." *Id.,* 2012 WL 1856491, *5. *See also, Chakrapani,* 2010 WL 2605819, *3 ("The Court has no evidence that the SEC's claims are baseless or brought with ill-motive.")

This factor weighs in favor of the SEC.

C. **The Defendants Have Not Expended Significant Resources In This Litigation, Which Has Barely Progressed**

Two of the most important elements under *Zagano* are the requirements that the defendants show that (1) the action has substantially progressed in litigation; <u>and</u> (2) that they have incurred substantial resources defending the case and preparing for trial. *See Banco Central,* 2006 WL 3456521, *5 ("Courts in the Second Circuit have placed particular importance on this factor, noting that the primary purpose of a *Zagano* analysis is to determine whether a case has proceeded so far that dismissing it in order for the plaintiff to start a separate action would prejudice the defendant.") (internal quotation omitted). These elements are separate. *See id.* ("Despite the advanced stage of litigation that this case has reached, the defendants still must show that they have expended resources in defending the claims that the plaintiff now seeks to dismiss.") (citations omitted).

Defendants have not even attempted to satisfy either element. *See* ICS Br. at 26-27. Nor could they. As set forth in the SEC's opening brief, though filed in June 2011, the case barely has progressed under the Federal Rules of Civil Procedure. There has been no Rule 16 or 26 initial pretrial conference, and the Court has not entered a scheduling order. Rule 26 initial disclosures have not been exchanged. No discovery plan has been negotiated (including an e-discovery plan under Rule 16(b)(3)(B) or Rule 26(f)(3)(C), which will be particularly important in this case given defendants' claims of trading through an electronic trading platform and their lack of hard-copy notes or research files). There have been no expert disclosures.

The case basically has been stayed since the SEC filed its motion in May 2012, while the Defendants and third party, Audi Saradar bank litigated a side dispute [*see* Dkt. 37-49] concerning the release of the bank's funds. *See Chakrapani,* 2010 WL 2605819, *3 ("these actions have not progressed past fact discovery, which has been stayed since October 28, 2009. Prior to the stay, no depositions had been taken, and the parties had not begun expert discovery. These factors weigh in favor of granting dismissal without prejudice."); *see also, In re Fosomax Products Liability Litigation*, Nos. 1:06–MD–1789–JFK, 2008 WL 5159778, *3-4 (S.D.N.Y. Dec. 10, 2008) (although case was filed in 2006, fact discovery did not begin until 2008).

As litigation has barely begun, Defendants cannot have expended significant resources preparing for depositions or trial. *See Banco Central,* 2006 WL 3456521, *6, citing *Smith v. Empire of Am. Realty Credit Corp.,* No. 94 Civ. 0786, 1999 U.S. Dist. LEXIS 1444, at *6 (W.D.N.Y. Jan. 11, 1999) (finding no prejudice where "the defendants have not to date committed great effort or expense in anticipation of a trial" and "next to nothing has taken place in more than a year.").

7

As for discovery, the SEC has taken only one telephonic deposition of Mr. Khalife, which itself left open many critical questions about his opportune trading in Telvent and other public companies;[3] his trading strategies and methodologies; his relationships and communications with the two other Geneva Traders;[4] and other critical issues that go to the merits of the SEC's claims. Defendants have not responded to the SEC's first set of document requests and interrogatories issued in April 2012 seeking this same information. [Exhibit 3]. Although submitting the same lengthy explanation of Mr. Khalife's purported trading strategies on a number of occasions, Defendants still have not provided any <u>contemporaneous</u> evidence to support their story of why they traded in Telvent when they did. *See* Khalife Dep. Tr. [Dkt. 61-16] at 124 (no research files or other contemporaneous notes). As the SEC reiterated at the April 24 Hearing: "Show us some evidence on your computer file, contemporaneous notes, something to back up your story, that you just didn't make this up a week ago. And that has not been forthcoming." *Id.* at 18-19. Defendants also have yet to provide an audit trail of the TradeStation Database that Mr. Khalife claims he used to make his trades, as they indicated they would. *See* Khalife Dep. Tr. at 124-125.

Just as important, Defendants have not produced any documents evidencing Mr. Khalife's contacts and communications with the two other Geneva Traders -- no phone records, emails, text messages, notes, memos, or other correspondence, though they surely communicated given their overlapping trades. The SEC also has not deposed the Geneva Traders to examine their relationships with Mr. Khalife, to determine why their trading

---

[3]  The Court held at the April 24 hearing that the SEC is permitted to take discovery concerning Defendants' other suspicious trades to establish a pattern of insider trading activity. *See* April 24 Tr. at 20:20-25.

[4]  For example, Mr. Khalife claimed that he dislikes one of the Geneva Traders, Yomi Rodrig, and would walk across the street if he saw him, but could not explain why Yodrig happened to trade at the same time frame as him in Telvent and other stocks. Khalife Dep. at 156-58.

paralleled his, or whether the Geneva Traders had access to secret information concerning Telvent that made its way to Mr. Khalife. Along the same lines, the SEC has not deposed any employees of Telvent, Abengoa, Schneider, or the banks, accountants, attorneys, and other agents that worked on the merger to determine a possible leak of inside information. *See* April 24 Tr. at 27 (SEC's goal in discovery is "to find the mole, find the leak, find the source of information.").

It is thus simply disingenuous of the Defendants to claim that the SEC has had a full and fair opportunity to support its claims in discovery (ICS Br. at 19), particularly in a foreign unknown purchaser insider trading case such as this, instituted on an emergency basis, where the SEC has been unable to engage in pre-litigation investigative efforts.

The Defendants have not identified a single case in which any court, at this early stage of litigation, has disallowed a plaintiff from exercising its "unqualified right" to dismiss its complaint. *See Banco Central,* 2006 WL 3456521, *6 (citing cases). The two cases they rely on, *Pacific Power,* 2004 WL 1432554, and *Deere,* 2004 WL 1432554, both had progressed for years in litigation, and the defendants had expended substantial resources defending the actions. Indeed, in *Deere,* by the time plaintiffs moved to dismiss, discovery had closed, the defendants had incurred more than $6 million in legal expenses, numerous expert reports had been exchanged, 50 fact and 13 expert depositions were taken, and the parties had engaged in dispositive motions practice. *See id.,* 2004 WL 1432554, at *2, and *Banco Central,* 2006 WL 3456521, *6 (distinguishing *Deere*).[5]

---

[5] The 2004 case cited by Defendants in their summary judgment analysis (ICS Br. at 2), *Galasso v. Eisman, Zucker, Klein & Rottenberg,* 310 F.Supp.2d 569 (S.D.N.Y. 2004), is similarly not applicable. That court identified several reasons why it denied plaintiffs' motion to dismiss, none present here, including that discovery had concluded, defendants had moved for summary judgment <u>before</u> the filing of plaintiff's motion to dismiss, plaintiff had made a "patently inadequate response" thereto, and "forfeit[ed] his opportunity to be heard by failing to file a set of papers competent to raise

9

On the other hand, this Court on many prior occasions has allowed plaintiffs to dismiss their cases much later in litigation, even after the close of discovery, after summary judgment motions had been filed, and indeed even after trial has commenced. *See Banco Central,* 2006 WL 3456521, *6 (citing cases) ("'[T]he advanced state of litigation is not by itself determinative, and dismissals have been granted on the eve of trial and even after trial has commenced.'"). *See also, Compania,* 2012 WL 1856491, *2-4 (granting SEC's motion for voluntary dismissal after close of discovery and after filing of summary judgment motions).

These two elements weigh in favor of the SEC.

**D.     Defendants Have Demonstrated No Duplication of Expenses**

Defendants also have not argued that they would be subject to any duplication of litigation expenses should this matter be refiled (ICS Br. at 26-27).  As Defendants have incurred few expenses to defend the case thus far (the expenses they incurred preparing their summary judgment motion do not count – *see Compania,* 2012 WL 1856491, *6), they cannot demonstrate that if the case is retried, that they will have to duplicate their efforts.

 To the extent that a second action would require duplication of efforts, much of the Defendants' work apparently already has been done. *See id., and Banco Central,* * 2006 WL 3456521, *6 ("Moreover, even if Banco Central were to re-litigate the remaining claims in a future action, whatever work that defendants have done in preparing for trial can easily be used in a subsequent, similar action.")  Indeed, Defendants claim to have gathered enough evidence to support a summary judgment motion.  The SEC, of course, does not agree that

---

a disputed issue of material fact." *See Pappas v. Twnsp. of Galloway,* 565 F.Supp.2d 581, 594 (D.N.J. 2008) (distinguishing *Glasso*).

summary judgment may be granted in their favor on the basis of Mr. Khalife's affidavit and an incomplete discovery record. *See Compania,* 2012 WL 1856491,*6.

This element weighs in favor of the SEC.

### E. The SEC's Reasons For Dismissal Are Valid; Defendants Will Not Suffer Legal Prejudice Should Its Motion Be Granted

Finally, the Defendants have not challenged the SEC's reasons for moving to voluntarily dismiss its action without prejudice.

Defendants certainly cannot reasonably dispute the point that the investing public will be well-served by allowing the SEC to reinstitute this action should it find evidence of a conduit of material inside information linking Telvent and their trading. *See Compania,* 2012 WL 1856491, *6 ("The Commission's mandate is to protect investors, and a full and complete investigation is in the interest of the investing public. The Commission's explanation is adequate, and this factor favors it.")  If the SEC is not able to discover such additional evidence, it will not bring a subsequent action, and the Defendants will be in no worse position than they are now.  *See id.* ("[A] dismissal without prejudice would place Defendants in the legal position that they occupied before the Commission's lawsuit was filed.")

As for the Defendants' general claims that this case has harmed their reputation and financial interests (ICS Br. at 26-27), they do not establish how such harms represent "plain legal prejudice" under Second Circuit law.  As both the *Compania* and *Charapani* courts found, after considering similar arguments, the defendants have not identified any "concrete harm" that would result from a dismissal without prejudice:

> Defendants also emphasize that a dismissal without prejudice would have a severe negative reputational effect and that the threat of future litigation would harm, if not destroy, Defendants' businesses. The Court is not unsympathetic to Defendants' reputational concerns. However, a dismissal without prejudice would place Defendants in the legal position that they occupied before the Commission's lawsuit was filed, and

11

> Defendants have not established that the reputational harms they cite would continue if the lawsuit were no longer pending. Moreover, Defendants have not shown that they would suffer from lingering negative reputational consequences distinct from other defendants confronted with the possibility of renewed allegations by the SEC. And, as discussed above, given the incomplete nature of discovery, it is premature to conclude that Defendants are entitled to a favorable determination of the merits.
>
> The prospect of a second litigation is not sufficient for the Court to deny the Commission's motion. Defendants have not identified any concrete harm or prejudice that would result if this action is dismissed without prejudice. Accordingly, this factor favors the Commission.

*Compania,* 2012 WL 1856491,*6. *See also, Chakrapani,* 2010 WL 2605819, *3 ("The Court has no evidence before it that, if this civil case were dismissed with prejudice, Chakrapani would be in a better position to gain employment.")

Defendants have not established that any of the claimed harm they suffered -- much of it caused by acts of third parties, such as Audi Saradar bank and the media (*see* Khalife Decl. [Dkt. 62] at 2-5) -- would continue if the SEC's motion was granted, or that such harm would dissipate if the motion was denied. They also have not shown that any "lingering negative reputational consequences" that they may suffer "are distinct from other defendants confronted with the possibility of renewed allegations by the SEC." *Id.*

This factor weighs in favor of the SEC.

## **CONCLUSION**

For the foregoing reason, and as set forth in the SEC's opening letter brief, the SEC respectfully requests that the Court grant its motion to dismiss this action under Fed. R. Civ. P. 41(a)(2) without prejudice, with each party bearing its own costs.

Dated:  November 5, 2012 /s Paul W. Kisslinger
Paul W. Kisslinger (PK0764)
U.S. SECURITIES AND EXCHANGE COMMISSION
100 F Street, NE
Washington, D.C. 20549-4030
(202) 551-4427
(202) 772-9246 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed on the Court's ECF system which provided notice to all parties listed thereon.

By: /s Paul W. Kisslinger